13702

CITIZENS' INS. AGENCY v. PETERSBURG INS. CO.

(171 S. E., 241)

*Messrs. Benet, Shand & McGowan* and *W. C. Boyd,* for appellant,

*Mr. W. C. Wolf,* for respondent,

October 11, 1933.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The plaintiff in this action sought to recover from the defendant, in the Court of Common Pleas of Orangeburg County, $3,000.00 as damages, "both actual, punitive, general and special." The complaint, served May 27, 1932, contained allegations to the following effect:

The plaintiff, for some years prior to the commencement of the suit, had operated a local insurance agency, in the City of Orangeburg, and had enjoyed a large and profitable business in writing a general line of insurance, and the plaintiff had enjoyed a good reputation for honesty, fair dealing, and promptness in the conduct of its business; about a year prior to the commencement of the suit, in a contract between the parties, the plaintiff was appointed local agent of the defendant; thereafter, the defendant informed the plaintiff that it wished to withdraw from business in plaintiff's agency, and defendant thereupon commenced to cancel, and did cancel, a number of policies written for it by the plaintiff; in the cancellation of such policies, the defendant acted in such a careless, negligent, and reckless manner that the business of the plaintiff was greatly injured; "in making such cancellations the defendant wrote each policyholder that his policy was cancelled, without giving any grounds or reasons therefor, and by the language used in making such cancellations induced the inference on the part of the policyholders that the plaintiff was insolvent or was conducting its business in a wrongful, improper and negligent manner, thus causing or necessitating the defendant's abrogating its contract with the plaintiff;" in giving the policyholders written notice of cancellations, the defendant directed each policyholder to call upon the plaintiff for a refund of the unearned portion of the premiums, the defendant knew that the plaintiff had no funds in its haids belonging to the defendant applicable to the payment of defendant's liabilities or obligations, thereby "including the inference on the part of the policyholders that the plaintiff had withheld funds belonging to the defendant," and had improperly and fraudulently conducted its transactions; that the wrongful and fraudulent acts of the defendant "constituted a slander upon the credit of the plaintiff"; and that a number of plaintiff's patrons visited its offices, inquired the reason of cancellations, and said "that they naturally supposed that it was due to the plaintiff not paying the premiums due the defend-

ant after having collected the same, or because the plaintiff had not properly conducted its business in relation to the defendant."

In its defense, after denying generally the allegations of the complaint, the defendant alleged that in March, 1932, having decided to withdraw from business in this state, with the purpose of effecting such withdrawal, it notified all of its policyholders, with policies issued through the plaintiff's agency, of its desire to cancel the policy under the terms thereof; that the direction contained in such notice that the policyholders should call on the local agent, the plaintiff, for refund of the excess of paid premiums, if any were due, was in strict accordance with the usual practice in such cases; that immediately after sending such notices, the defendant agreed with the plaintiff on a method of handling any demand for return premiums, and that the same were promptly paid by the defendant to the plaintiff; and nothing in the notices sent out by the defendant contained any reflection upon the plaintiff, and no reflection was intended by the defendant.

There were a verdict and judgment in favor of the plaintiff for $1,500.00, resulting in this appeal by the defendant.

The exceptions, ten in number, complain of the admission of certain testimony offered by the plaintiff, the refusal to grant defendant's motion for a directed verdict in its favor, and the failure, after the adverse verdict, to grant the defendant's motion for a new trial.

In passing upon the motion for a directed verdict, the trial judge, Hon H. F. Rice, announced that he would exclude from the consideration of the jury "any issue as to any libelous statements as a basis of recovery." Presumably, in the absence of the jury, he further said: "I guess I will have to submit this case to the jury. It is not a strong case. I will see what the jury says about it. There may be some evidence which would require me to submit it to the jury."

In his charge to the jury, after repeatedly cautioning counsel for both sides to correct him if he made any errone-ous statement as to undisputed facts adduced in the evidence,

Judge Rice summed up succinctly those facts, which, in our language, were as follows:

The defendant decided to withdraw from business in this state and to cancel all the policies carried by it. With that purpose in view, the defendant got in touch with the plaintiff, its local agent, and notified it to effect the cancellations of policies issued through that agency. Finally, after some correspondence between the defendant and the plaintiff, and the plaintiff and the general agent of the company, the result was that the defendant itself wrote to practically all of the policyholders, giving notice of the desired cancellations. One of the policies issued by the defendant, introduced in evidence, gave the company the right to cancel the policy upon giving five days' notice to the assured of cancellation, and the provision as to cancellation said it could be effected "with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand." The notices of cancellation were not given through the plaintiff agency. Some thirty-five or forty policies, issued and delivered through the plaintiff agency, were canceled.

Referring to the allegations of the complaint, the trial judge stated that the plaintiff's claim for damages was based upon "the manner in which they (the defendant) cancelled the policies," and that the plaintiff alleged that thereby there was a loss to him of business. Further, as to plaintiff's cause of action, the jury were told that the plaintiff claimed that the policies should have been cancelled through it, but that the defendant "went over its head and dealt directly with the policyholders, and that is what damaged its business."

As to the law, the jury were instructed, if the plaintiff had satisfied them "by the greater weight of the evidence that that kind of cancellation and that method was used, and that is was an unusual method, not a customary business method, and one to be expected by the insurance agent, who was attending to the business of this company, and that this

agency was damaged by that, he could recover such damages as he has suffered in that way, but not for any damages which might have come to him through the cancellation of the policies, because the company had the right to cancel the policies any time they wanted to, upon giving the proper notice to the policyholders."

In our examination of the record, we are unable to find any formal written contract between the parties as to the agency relationship. It appears that the general agent simply by letter appointed the plaintiff as the agent of the defendant. At the time of the appointment, the blank policies, to be used by the plaintiff for risks carried by the defendant, were furnished the plaintiff. The policies carried the provision as to cancellation mentioned before. We find nothing whatever in the evidence showing that there was any special agreement, written or verbal, whereby the cancellation of policies was to be made through the plaintiff agency. The only agreement as to cancellation between the plaintiff and the defendant, if there was any agreement at all, was that contained in the policies to be used by the plaintiff.

The insurance company, therefore, clearly had the right to give direct to the policyholders notice of the desired cancellations, and was not required to give that notice through the plaintiff. It was under no legal duty to effect any cancellation through the plaintiff. Since it had no such legal duty in that regard, we do not see how it is possible to hold the defendant liable for any losses occuring to the plaintiff because of the cancellation of the policies by the defendant in the manner which it had the legal right to pursue.

In the notice of cancellation, the defendant did direct policyholders to call upon the plaintiff for the unearned premiums due them, if there were any. At the time, so the evidence shows, the plaintiff did not have in its hands belonging to the defendant near enough money to pay the unearned premiums due the policyholders. After the cancellations had been effected, the policies being returned to

the defendant by the plaintiff, the amounts due the policyholders were paid to the plaintiff by the defendant. It was claimed in the complaint by the plaintiff that the notice to call upon it for unearned premiums, under the circumstances, was a slander of the credit of the plaintiff. That issue, however, was eliminated by the trial Judge; he sustaining the first ground of defendant's motion for a directed verdict, which was this: "Because there is no testimony of any libelous statements by the defendant concerning the plaintiff." That ruling has not been questioned in any manner by the plaintiff.

The third ground of the motion for a directed verdict was this: "Because there is no evidence of any act on the part of the defendant which produced any damage to plaintiff or of any careless or reckless, fraudulent, willful or wanton manner in exercising its contractual rights which could have produced any damage to plaintiff."

Under the evidence, we think a directed verdict on that ground should have been granted, for there is no showing whatever that the defendant violated any "contractual rights" of the plaintiff with it.

It is unnecessary to consider any of the exceptions, except those pertaining to the refusal to grant the directed verdict.

The judgment of this Court is that the judgment below be, and the same is hereby, reversed, and that a directed verdict in favor of the defendant, as provided for in Rule 27 of this Court, be entered.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.